

1   Cliff Gardner SBN 93782
    2088 Union Street, Suite 3
2   San Francisco, CA 94123
    Telephone: (415) 922-9404
3   Facsimile: (415) 922-4310

4   Edward W. Swanson SBN 159859
    Swanson & McNamara LLP
5   300 Montgomery Street, Suite 1100
    San Francisco, California 94104
6   Telephone: (415) 477-3800
    Facsimile: (415) 477-9010
7   Attorneys for MATTHEW BRADEN

**FILED**

MAY 1 9 2005

**CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____**

8

9                   UNITED STATES DISTRICT COURT

10              EASTERN DISTRICT OF CALIFORNIA

11

12   MATTHEW BRADEN,                          Case No. CIV S-00-1595 MCE GGH P

13                   Petitioner,

14        vs.                                 PROPOSED SETTLED STATEMENT

15   RODNEY HICKMAN, et al.,

16                   Respondents.

17

18                          **INTRODUCTION**

19        On February 22, 2005, the Court held an evidentiary hearing in connection with Matthew

20   Braden's habeas corpus petition in the above-captioned case.  The hearing was recorded by electronic

21   sound recording; no court reporter was present.  Upon receiving the transcript, the parties learned that

22   the voice recording ended abruptly at 11:13:48. *See* Reporter's Transcript of February 22, 2005

23   Proceedings ("RT") at 72.  The voice recording resumed at 1:31 p.m., following a lunch break. *Id.*  As a

24   result, there is no recording of (1) a portion of respondent's cross-examination of Joshua Sweitzer, (2)

25   petitioner's redirect examination of Sweitzer, or (3) petitioner's counsel's direct examination of

26   Matthew Braden.

27        In an April 19, 2005 conference call at which the Court presided and counsel for petitioner and

28   respondent participated, it was agreed that the parties would attempt to reconstruct from their notes and

1    memories the testimony that had not been recorded.  To that end, the parties submit the following settled

2    statement for the Court's review.  It is the parties' request that, should the Court find the settled

3    statement to be accurate, the Court order the settled statement to serve as the transcript in place of the

4    missing section of the recording of the hearing.

5                                   **SETTLED STATEMENT**

6    After the audio ends at 11:13:48, Deputy Attorney General Craig Meyers asked Joshua Sweitzer

7    about the market in 1996 for stolen Roadster rims and continued this line of questioning for a few

8    moments.

9    Meyers asked Sweitzer questions about whether there was a plan to rob the victim before the

10   victim was shot.  In response, Joshua Sweitzer stated: "There was no intention to rob that individual."

11   He also stated, "There was no discussion of anything that something would happen."

12   Meyers asked Sweitzer questions about alleged offenses Sweitzer had committed while in

13   custody.  After a few questions, Edward Swanson, counsel for petitioner, objected, and the Court

14   sustained objections to this line of questioning on the ground that Sweitzer had not been convicted of

15   any of the alleged offenses.

16   Meyers asked Sweitzer if Braden was guilty of any crimes.  Sweizter answered, "Stupidity."

17   Sweitzer went on to state, "If you're an unwilling bystander, especially not murder."

18   Meyers asked Sweitzer about Constance Gutowsky, Sweitzer's counsel in the underlying trial.

19   Sweitzer said that Gutowsky had told him: "'Don't worry about it.  Everything's going to be fine.'" He

20   also said that Gutowsky "never answered a question."  Meyers introduced Gutowsky's declaration and

21   read the following from the declaration:

22        He said he would never tell on his co-defendants.  He called people who did so "bitch asses" and
           said he would never testify.  He said repeatedly that Matt Braden was lying and that Matt wanted
23        the tire rims and that David Ellis was going to get them for him as a trade for the gun that was
           used in the charged offenses.

24
     Sweitzer said that this statement was not true and was "a retaliatory statement by her."  Sweitzer denied
25
     making the statements about Matt Braden lying.
26
          Meyers closed by asking Sweitzer why he had not filed a federal habeas.  Sweitzer testified that
27
     his mother had said that a habeas would be filed on his behalf, but none ever was.
28

                                               2

1    On re-direct, Swanson asked Sweitzer if he had been told by lawyers how to testify at this

2  hearing. He said he had not.

3    Swanson then asked Sweitzer why Braden got into the stolen car that Sweitzer was driving.

4  Sweitzer stated that Braden got into the car because there was no other way for him to get home.

5    Swanson then reviewed with Sweitzer the following testimony from his interview with

6  Detectives Garverick and Fancher:

7  FANCHER:    There's got to be a reason if you're going to do this.

8  SWEITZER:    This is what I was saying. The reason probably behind that was – he wanted to
             follow them – and then just like follow him to his house. Follow him by his

9             house or whatever, because the guy would park his car or whatever, and then he'd
             leave and come back –

10
11  FANCHER:    Are – is this an assumption on your part? Or is this what David is saying?

12  SWEITZER:    No. This is basically what – because a lot of people have – like – because my
             friend, Brian, used to have roadsters on his car. We used to get followed a lot like
             that, too, to his house. A lot of people would follow you to the house or whatever

13             and then they'll drive off, and then they'll come back and try to steal your shit
             like a couple days later or something.

14
    FANCHER:    Okay. Okay.

15
    SWEITZER:    And just – I was just figure – that's the way I figured it. And that he would just

16             follow them –

17  GARVERICK:    Okay. He was going to follow them and set it up and do it some other time.

18    Swanson also reviewed with Sweitzer other portions of his interview with police which

19  Meyers had asked about on cross-examination. RT 69-70. After reviewing this testimony with the

20  witness, Swanson asked Sweitzer questions about the testimony. Sweitzer confirmed that, when he told

21  the officers that David Ellis wanted the rims, he did not mean to imply that he knew at that time (while

22  in the car) that Ellis was going to engage in carjacking to get the rims. Rather, he meant to

23  communicate that Ellis was going to return later to steal the rims when the driver was not present. He

24  also said that his comments to police about why Ellis shot the driver and whether it was done so Ellis

25  and Braden could steal tire rims were thoughts that he had some time after the incident occurred; neither

26  he nor Braden was not aware at the time of the shooting what Ellis' intentions were. (Sweitzer largely

27  avoided mentioning Ellis by name; he often referred to him as "another person" in the stolen car with

28  Sweitzer and Braden.)

3

1    Swanson informed the court that he did not need to call petitioner's investigators, Tasha Paris

2    and Debra Estrin, to impeach Sweitzer, and they were both released.

3    Swanson then called Braden to the stand. Meyers objected, and the Court requested an offer of

4    proof. Swanson said that Braden would testify about his relationship with Sweitzer and about certain

5    relevant aspects of the incidents of July 14, 1996. The Court asked whether Braden would offer

6    testimony about the incidents that would differ from his testimony at trial, and Swanson said his

7    testimony would be consistent. The Court then ruled there was no need for further testimony on that

8    subject.

9    Swanson asked Braden about his relationship with Sweitzer before the incident. Braden testified

10   that he had met Sweitzer working on a concrete job for the father of Brian Lutz. He testified that, after

11   that first meeting and prior to the date of the incident, July 14, 1996, Braden had seen Sweizter only a

12   few times. He did not consider him a friend, just an acquaintance.

13   Braden testified that after the trial he had no contact with Sweitzer by mail; he never submitted a

14   Request for Correspondence Approval (CDC 1074) to communicate with Sweitzer; he never spoke with

15   Sweitzer over the phone; he never sent any messages to Sweizter through a third party; and he never

16   received any messages from Sweitzer through any third party, other than receiving greetings through

17   counsel. Braden further testified that he had not, directly or through any third party, offered Sweitzer

18   any benefit for testifying favorably. He also testified that he hand not made any promises or

19   commitments of any sort to Sweitzer in exchange for his testimony.

20   Braden testified that prior to trial, he learned that Sweitzer was upset with him. Specifically,

21   Braden recalled being in a lock-up with Sweitzer and Ellis before a pre-trial hearing. Sweitzer made

22   threatening comments to Braden because Braden had made statements to police. Sweitzer was also

23   angry when Braden testified at their joint trial.

24   Braden testified that he was not aware of any reason that Sweitzer would give favorable

25   testimony, other than that it was true.

26                                          **STIPULATION**

27   The parties HEREBY STIPULATE that the above settled statement may serve as the transcript

28   in place of the missing section of the recording of the February 22, 2005 hearing in the above-captioned

1  matter.

2       IT IS SO STIPULATED.

3

4  Dated:  April 26, 2005

5                         \s\ Edward W. Swanson
                       EDWARD W. SWANSON

6                         Swanson & McNamara LLP
                       Counsel for MATTHEW BRADEN

7

8  Dated: April 26, 2005

9

10                         \s\ Craig S. Meyers
                       CRAIG S. MEYERS
                       Deputy Attorney General

11

12

13

14                           **ORDER**

15       Upon the stipulation of the parties, and good cause appearing therefor, it is HEREBY

16  ORDERED that the settled statement to which the parties have agreed shall serve as the transcript in

17  place of the missing section of the recording of the February 22, 2005 hearing in the above-captioned

18  matter.

19

20       IT IS SO ORDERED.

21

22  Dated:  *May 19, 2005*               GREGORY G. HOLLOWS

23

24                         HON. GREGORY G. HOLLOWS
                       United States Magistrate Judge

25

26

27

28